# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | |
|---|---|
| UNIVERSAL UNDERWRITERS SERVICE CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   Case No.: ) |
| BART REAGOR AND ANNETTE REAGOR, | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Universal Underwriters Service Corporation ("Universal"), by and through its attorneys Foran Glennon Palandech Ponzi & Rudloff, PC and McCleskey Harriger Brazil & Graf LLP, submits this Complaint against Bart Reagor and Annette Reagor (collectively, the "Defendants"), and in support thereof states as follows:

## PRELIMINARY STATEMENT

Universal brings this suit to enforce its rights under an Unconditional Personal Guaranty (the "Guaranty") executed by the Defendants. Defendant Bart Reagor is an owner and operator of the Reagor-Dykes Auto Group, a business group which specializes in the sale and lease of automobiles. Under the Guaranty, the Defendants individually guaranteed all debts and amounts owed by the RD Debtors, as defined below, to Universal. The Defendants have failed and refused to fulfil their obligations under the Guaranty and have therefore committed breach of contract.

## PARTIES

1. Plaintiff Universal, an Illinois corporation, with its principal place of business at 7045 College Boulevard, Overland Park, Kansas 66211.

2. Accordingly, for jurisdictional purposes, Universal is a citizen of the State of Illinois and the State of Kansas.

3. Defendant Bart Reagor is a citizen of the United States and a resident of Lubbock, Texas. He may be served with process at 2809 19th Street, Lubbock, Texas 79410 or wherever he may be found.

4. Defendant Annette Reagor is a citizen of the United States and a resident of Lubbock, Texas. She may be served with process at 2809 19th Street, Lubbock, Texas 79410 or wherever she may be found.

5. Accordingly, for jurisdictional purposes, Defendants are citizens of the State of Texas.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. This Court has general and specific jurisdiction over the Defendants because they are citizens of the State of Texas, have continuous and systematic contacts with Texas, and the events or omissions that give rise to the claim asserted herein occurred in Texas.

8. Venue is proper pursuant to 28 U.S.C. § 1391 as Defendants reside within this District and a substantial part of the events or omissions that give rise to the claim asserted herein occurred in this District.

## **BACKGROUND**

A. Reagor-Dykes Auto Group

9. Defendant Bart Reagor is an owner and operator of several car dealerships colloquially known as the Reagor-Dykes Auto Group.

10. Reagor-Dykes Auto Group's primary business is the sale and lease of new and used automobiles.

11. Upon information and belief, the Reagor-Dykes Auto Group consists of the following entities:

   a. Reagor-Dykes Auto Company LP

   b. Reagor-Dykes Floydada LP

   c. Reagor-Dykes Imports LP

   d. Reagor Dykes Motors LP

   e. Reagor-Dykes Plainview LP

   f. Reagor-Dykes Amarillo LP

   g. Reagor-Dykes Snyder LP

   h. Reagor Auto Mall, LTD

   i. Reaor Auto Mall I, LLC

   j. Reagor-Dykes II, LLC

   k. Reagor-Dykes III, LLC

   l. Prime Capital Auto Lease, LLC

   m. R&D Investments Reinsurance Company Ltd

   n. R&D II

   o. R&D III

    p. R&D IV

    q. R&D V

    r. RD Executive Travel

    s. RD 7 Investments, LLC

    t. RDM7, LLC

    u. Reagor Dykes Innovative Solutions, LLC

    v. Tex-Fi Capital, LLC

12. Throughout 2016 and 2017, the Reagor-Dykes Auto Company LP, Reagor-Dykes Floydada LP, Reagor-Dykes Imports LP, Reagor Dykes Motors LP, Reagor-Dykes Plainview LP, Reagor-Dykes Amarillo LP, Reagor Auto Mall Ltd, Reagor-Dykes Snyder LP, RD II LLC, RD III LLC, and Reagor Auto Mall I LLC, the Defendants, and Universal entered into three agreements; the F&I Master Dealer Agreement, the F&I Loan Agreement and Promissory Note, and the Unconditional Personal Guaranty.

13. On July 31, 2018, Ford Motor Credit Company, LLC filed its Original Complaint And Application For Writ Of Sequestration against certain Reagor-Dykes Auto Group entities in the Northern District of Texas. *See Ford Motor Credit Company, LLC v. Reagor-Dykes Amarillo LP et al*, (5:18-cv-00186-C) (the "Ford Litigation").

14. On August 1, 2018, and as a result of the Ford Litigation, Reagor-Dykes Auto Company LP, Reagor-Dykes Floydada LP, Reagor-Dykes Imports LP, Reagor Dykes Motors LP, Reagor-Dykes Plainview LP, and Reagor-Dykes Amarillo LP filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, in the Bankruptcy Court of the Northern District for Texas. *See In re Reagor-Dykes Motors, LP et al.*, No. 18-50214-rlj-11 (Bankr. N.D. Tex.).

15. On November 2, 2018, Reagor Auto Mall Ltd, Reagor-Dykes Snyder LP, RD II LLC, RD III LLC, and Reagor Auto Mall I LLC filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Texas.

16. The Defendants have guaranteed all amounts owed to Universal by Reagor-Dykes Auto Company LP, Reagor-Dykes Floydada LP, Reagor-Dykes Imports LP, Reagor Dykes Motors LP, Reagor-Dykes Plainview LP, Reagor-Dykes Amarillo LP, Reagor Auto Mall Ltd, Reagor-Dykes Snyder LP, RD II LLC, RD III LLC, and Reagor Auto Mall I LLC (individually an "RD Debtor," and collectively "RD Debtors").

B. The F&I Master Dealer Agreement

17. On or about June 15, 2016, Reagor Auto Mall Ltd, entered into the F&I Master Dealer Agreement (the "Dealer Agreement") with Universal, a true and accurate copy of which is attached hereto as Exhibit 1.

18. Reagor Auto Mall Ltd entered into the Dealer Agreement on behalf of itself as well as the "enrolled affiliated and/or subsidiary dealerships set out on Exhibit A, as updated from time to time[.]" Dealer Agreement p. 1.

19. Under the Dealer Agreement, Reagor Auto Mall Ltd "represents and warrants that he/she is authorized, with requisite authority, to sign this Agreement on behalf of each dealership listed on attached Exhibit A, if applicable, and any dealerships hereafter acquired, with the intention to bind each Dealer entity listed on Exhibit A to this Agreement (including for purposes hereof all 'in force' schedules and related documents), jointly and severally." Dealer Agreement § 22.

20. Schedule A of the Dealer Agreement includes Reagor-Dykes Auto Company LP, Reagor-Dykes Floydada LP, Reagor-Dykes Imports LP, Reagor Dykes Motors LP, Reagor-Dykes

Plainview LP, Reagor-Dykes Amarillo LP, and Reagor Auto Mall Ltd as parties to the Dealer Agreement (individually, a "RD Dealer," and collectively, the "RD Dealers"). *See* Exhibit A attached to Dealer Agreement.

21. Upon information and belief, Reagor-Dykes Snyder LP is also a "RD Dealer" and party to the Dealer Agreement as a "dealership hereafter acquired."

22. Under the Dealer Agreement, Universal "provides or administers a number of products sold in conjunction with automobile and other motor vehicle sales to consumers and businesses, including but not limited to vehicle service contracts, debt cancellation contracts, theft deterrent contracts, road hazard protection contracts, maintenance plan contracts and limited warranty contracts" (collectively, the "Products"). Dealer Agreement, p. 1.

23. The RD Dealers were authorized to solicit and sell Universal's Products to their customers.

24. For each Product sold, the RD Dealers collected the premium owed to Universal (the "Remit"), as well as a markup that the RD Dealers retained as their profits (the "Markup").

*i. The Remit*

25. The RD Dealers are obligated "[t]o hold all funds received on behalf of [Universal] in a fiduciary capacity. Under no circumstances will [RD] Dealer make any personal or other use of funds." Dealer Agreement § 5(D).

26. The RD Dealers maintained an electronic business submission system with which Universal was able to monitor a) all Products sold, b) Product-contracts that were cancelled, and c) the amount of Remit held by the RD Dealers for the benefit of Universal.

27. The RD Dealers have not made complete Remit payments owed to Universal for the months of May, June, July, August, September, and October in 2018.

28. Upon information and belief, since the August 1, 2018 bankruptcy filing, the RD Dealers have not solicited or sold any new Product.

29. In the event that RD Dealers continued to solicit and sell Products, the Remit is owed to Universal for those Products as well.

30. As of August 2018, the outstanding amount of Remit owed is Four Hundred Nineteen Thousand Eight Hundred Sixty-Nine dollars and Thirty-Four cents ($419,869.34).

*ii. The Markup*

31. In the event of cancellation by a customer, the RD Dealers are required to refund the Remit and Markup to the customer, less any applicable cancellation or service fees.

32. Even upon termination of the Dealer Agreement, the RD Dealers have the "continuing liability to immediately make refunds to the [customers] on cancelled Contracts, for and during the term of all Contracts issued by the [RD] Dealer." Dealer Agreement § 18(E).

33. Since August 1, 2018, on behalf of the RD Dealers, Universal has refunded customers the RD Dealers' Markup (the "Refunded Markup").

34. As Products continue to be cancelled by customers, Universal continues to pay the Refunded Markup to customers.

35. The RD Dealers are required to reimburse Universal for the Refunded Markup.

36. As of August 2018, the Refund Markup totals Forty Four Thousand One Hundred Three dollars and Thirty cents ($44,103.30).

*iii. The Default*

37.　As of August 2018, the amounts owed to Universal under the Dealer Agreement are Four Hundred Sixty Three Thousand Nine Hundred Seventy Two dollars and Sixty-Four cents ($463,972.64) which includes the Remit and the Refunded Markup.

38.　The RD Dealers have failed and refused to timely transfer the Remit to Universal and are therefore in default of their obligations under the Dealer Agreement.

39.　The RD Dealers have failed and refused to timely reimburse Universal for the Refunded Markup and are therefore in default of their obligations.

C. The F&I Loan Agreement and Promissory Note

40.　On or about June 20, 2016, Reagor Auto Mall I LLC, Reagor-Dykes II LLC, and Reagor-Dykes III LLC on behalf of themselves and related entities, entered into an F&I Loan Agreement (the "Initial Loan Agreement") with Universal.

41.　The terms of the Initial Loan Agreement provided for a Three Million Dollar ($3,000,000.00) loan from Universal to the aforementioned entities.

42.　Repayment of the loan included One Hundred Ten Thousand Five Hundred Ninety-Six Dollars ($110,596.00) in cost of fund fees in addition to the loan principal.

43.　As such, the total debt owed to Universal under the Initial Loan Agreement was Three Million One Hundred Ten Thousand Five Hundred Ninety-Six Dollars ($3,110,596.00).

44.　The debt under the Initial Loan Agreement was evidenced by a Promissory Note executed by Reagor Auto Mall I LLC, Reagor-Dykes II LLC, and Reagor-Dykes III LLC, on behalf of themselves and related entities, on or about June 20, 2016, and made payable to Universal.

45. On or about June 1, 2017, Reagor Auto Mall I LLC, Reagor-Dykes II LLC, and Reagor-Dykes III LLC, on behalf of themselves and related entities, entered into a subsequent F&I Loan Agreement (the "Loan Agreement") with Universal, attached hereto as <u>Exhibit 2.</u>

46. Defendant Bart Reagor executed the Loan Agreement on behalf of the RD Debtors.

47. The Loan Agreement provided that the RD Debtors would borrow Four Million Six Hundred Sixty Four Thousand and Five Hundred Sixteen Dollars ($4,664,516.00) from Universal, which included Three Million Dollars ($3,000,000.00) in new monies loaned and the outstanding principal of One Million Six Hundred Sixty Four Thousand and Five Hundred Sixteen Dollars ($1,664,516.00) from the Initial Loan Agreement.

48. Repayment of the Loan Agreement included a cost of fund fees of Two Hundred Fifty-Five Thousand and Nine Hundred Sixty-Five Dollars ($255,965.00).

49. The combined debt owed by the RD Debtors to Universal under the Loan Agreement was Four Million Nine Hundred Twenty Thousand and Four Hundred Eighty-One Dollars ($4,920,481.00) which is evidenced by a Promissory Note, dated June 1, 2017, executed by the RD Debtors and made payable to the order of Universal (the "Note"), attached hereto as <u>Exhibit 3.</u>

50. The Loan Agreement provided that it and the Note shall be repaid, in part, through a charge on the Markup that the RD Debtors receive from the sale of Universal Products under the Dealer Agreement. Loan Agreement § 3.

51. The RD Debtors must sell enough Products in a given quarter to satisfy a quarterly minimum repayment amount of Four Hundred Ten Thousand Forty dollars ($410,040.00) (the "Quarterly Minimum Repayment Amount"). Loan Agreement § 3.

52. Failure to satisfy the Quarterly Minimum Repayment Amount through Product sales obligated the RD Debtors to deliver a payment to Universal that made up the difference. Loan Agreement § 3.

53. The RD Debtors must satisfy the Quarterly Minimum Repayment Amount by the fifteenth day of July, October, January, and April, until the Loan Agreement was repaid. Loan Agreement § 3.

54. The Loan Agreement provides, in relevant part, that it "shall automatically terminate, without notice, . . . . in the event of a material breach of this Agreement by [the RD Debtors] (or any of them) [.]" Loan Agreement § 9(b)(ii).

55. In the event of termination, the RD Debtors "agree, jointly and severally, to repay [Universal] immediately the entire outstanding balance of the Loan Amount." Loan Agreement § 9(c).

56. Each RD Debtor is also "jointly and severally liable for such repayment and collection costs thereof, including but not limited to reasonable attorneys' fees and costs." Loan Agreement § 9(d).

57. The Note provides, in relevant part, that "If a (i) [RD Debtor] files a voluntary petition in bankruptcy, . . .(iv) [RD Debtor] fails to pay any principal, interest, or any other amounts due hereunder on this Note, and/or (v) [RD Debtor] breaches any material covenant or other agreement contained in this Note, then [Universal] may at any time in [Universal's] sole discretion (a) declare any portion or all of the outstanding principal amount of the loan evidenced hereby to be due and payable whereupon such portion of the loan evidenced hereby shall immediately mature and become due and payable together with interest accrued thereon, without presentment, demand, diligence, protest, notice of acceleration, or other notice of any kind, all of which [RD Debtor]

hereby expressly waive and/or (b) without notice of default or demand, proceed to protect and enforce tis rights and remedies by appropriate proceedings, whether for damages or the specific performance of any provision of this Note or proceed to enforce the payment of the loan evidenced hereby." Note § 2.

58. The RD Debtors failed to make the Quarterly Minimum Repayment Amount as of October 15, 2018 and are thereby in breach of the Loan Agreement, making all amounts owed immediately due and payable.

59. The RD Debtors filing of Chapter 11 bankruptcy petitions constitutes a default under the Note thereby making all amounts owed immediately due and payable.

60. As of August 2018, the amounts owed to Universal under the Loan Agreement and Note are Two Million Four Hundred Eighty Three Thousand Three Hundred and Seventy-Eight dollars ($2,483,378.00).

61. Pursuant to the Loan Agreement, Universal has a right, at its discretion, to "set off any amounts due [to Universal] under this Agreement against any amounts due to [the RD Dealers], either jointly or individually, by [Universal] or [Universal's] affiliates, under any other agreement or relationship between those parties." Loan Agreement § 11.

62. On or about December 4, 2018, Universal exercised its right to setoff in the amount of $252,566.

63. On or about February 5, 2019, Universal against exercised its right to setoff in the amount of $223,134.

64. Following the setoffs, the total amount due and owing under the Loan Agreement and Note are Two Million Seven Thousand Six Hundred and Seventy-Eight dollars ($2,007,678.00).

D. The Unconditional Personal Guaranty

65.     In conjunction with the Loan Agreement, Defendants executed the Guaranty, attached hereto as Exhibit 4.

66.     Pursuant to the Guaranty, the Defendants "jointly and severally guarantee unconditionally and irrevocably the payment of any and all indebtedness or obligations of [the RD Debtors] to [Universal], its successors and assigns, including, but not limited to, the balance of a loan in the original amount of Four Million Nine Hundred Twenty Thousand and Four Hundred and Eighty-One Dollars ($4,920,481.00) made by [Universal] pursuant to the F&I Loan Agreement dated June 1, 2017 . . . now owing or hereafter to be incurred by or for [RD Debtors] in connection with the contemplated transaction[.]" Guaranty ¶ 2.

67.     The Defendants also agree "that this Guaranty is a present and continuing guaranty of payment and not of collectability, and that [Universal] shall not be required to prosecute collection, enforcement or other remedies against the [RD Debtors] or any other person before seeking payment from the [Defendants] under this Guaranty." Guaranty ¶ 2.

68.     The Defendants additionally guaranteed "unconditionally the payment of any and all costs and expenses in connection with the enforcement of this Guaranty and collection thereof, including, but not limited to, reasonable attorney fees and legal expenses." Guaranty ¶ 3.

69.     The amounts owed to Universal under the Loan Agreement and Note are Two Million Seven Thousand Six Hundred and Seventy-Eight dollars ($2,007,678.00).

70.     As of August 2018, the amounts owed to Universal under the Dealer Agreement are Four Hundred Sixty Three Thousand Nine Hundred Seventy Two dollars and Sixty-Four cents ($463,972.64).

71. On September 25, 2018, Universal made a demand on the Defendants to honor their obligations under the Guaranty and for payment of the amounts due and owing to Universal.

72. On March 7, 2019, Universal made a subsequent demand on the Defendants to honor their obligations under the Guaranty and for payment of the amounts due and owing to Universal.

73. The Guarantors failed and refused to remit the sums due and owing to Universal.

74. The outstanding amounts owed under the Dealer Agreement, Loan Agreement, Note, Guaranty, and fees and costs incurred by Universal in connection with the Dealer Agreement, Loan Agreement, Note, and Guaranty are payable by Defendants Bart Reagor and Annette Reagor, and Universal seeks judgment for these amounts.

**COUNT I – BREACH OF CONTRACT: UNCONDITIONAL PERSONAL GUARANTY
(BART REAGOR AND ANNETTE REAGOR)**

75. Universal repeats, restates, and re-alleges the allegations of the above-stated paragraphs as if fully set forth herein.

76. Universal is a party to the Dealer Agreement and Loan Agreement.

77. Universal is the owner and holder of the Note and Guaranty.

78. Universal complied with all obligations in connection with the Dealer Agreement, Loan Agreement, Note, and Guaranty.

79. Under the Guaranty, Defendants are liable for all indebtedness or obligations of the RD Debtors to Universal.

80. Under the Guaranty, Defendants are liable for all amounts due under the Dealer Agreement.

81. Under the Guaranty, Defendants are liable for all amounts due under the Loan Agreement and Note.

82. Defendants, jointly and severally, owe $2,471,650.64, exclusive of attorneys' fees, costs, and expenses payable in accordance with the Dealer Agreement, Loan Agreement, Note, and Guaranty.

83. Prior to filing the instant litigation, Universal demanded payment of the amounts owed by Defendants.

84. Defendants have failed, refused, and continue to refuse to remit payment of the amounts owed to Universal.

85. Defendants have breached the Guaranty.

86. Universal has been damaged by their breach of the Guaranty in the amount of $2,471,650.64, plus all attorneys' fees, costs, and expenses payable in accordance with the Guaranty, and otherwise applicable law, that have accrued and continue to accrue.

87. Accordingly, Universal respectfully requests that this Honorable Court enter judgment against Bart Reagor and Annette Reagor, jointly and severally, in the amount of $2,471,650.64, plus all attorneys' fees, costs, and expenses payable in accordance with the Guaranty, and otherwise applicable law, that have accrued and continue to accrue.

## PRAYER FOR RELIEF

WHEREFORE, Universal Underwriters Service Corporation prays for judgment as follows:

1. For an order declaring that Bart Reagor and Annette Reagor are jointly and severally liable due to their breach of contract regarding the Unconditional Personal Guaranty, entitling Universal Underwriters Service Corporation to damages in the amount of $2,471,650.64;

2. All other attorneys' fees, costs, and expenses payable in accordance with the Unconditional Personal Guaranty; and

3. Such other and further relief as the Court may deem just and proper.

Dated: March 21, 2019                    Respectfully Submitted,

                    McCLESKEY, HARRIGER,
                     BRAZILL & GRAF, L.L.P.
5010 University Avenue, Suite 500
Lubbock, Texas 79413
Tel: (806) 776-7306
Fax: (806) 796-7396
Email: bdavidson@mhbg.com

*/s/ Benjamin H. Davidson, II*
Benjamin H. Davidson, II
State Bar No. 05430590


AND


FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C
Susan N.K. Gummow (Pro Hac Pending)
Igor Shleypak (Pro Hac Pending)
222 N. LaSalle St., Ste. 1400
Chicago, IL 60601
Tel:   (312) 863-5000
Fax:   (312) 863-5099
Email: sgummow@fgppr.com
       ishleypak@fgppr.com

*Counsels for Plaintiff*
*Universal Underwriters Service Corporation*

15